**Anna L. SCHWAGER, Administratrix of the Estate of Robert N. Schwager,**

v.

**UNITED STATES of America.**

**Civ. A. No. 41859.**

United States District Court, E. D. Pennsylvania.

May 11, 1971.

Benjamin Kuby, Philadelphia, Pa., for plaintiff.

Louis C. Bechtle, U. S. Atty., J. Clayton Undercofler, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

OPINION AND ORDER

BECKER, District Judge.

This is a suit under the Federal Tort Claims Act. It raises the question of

whether the administratrix of the estate of a serviceman who became ill while on leave, entered a military hospital for treatment, and whose duty station was transferred to that hospital pursuant to Navy regulation, may maintain an action for medical malpractice against the Government under the Federal Tort Claims Act. We hold that she may not, and grant the Government's motion for summary judgment. In so doing, we will consider the applicability of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) to these facts, and the contention of plaintiff that the *Feres* doctrine has been "eroded" and is no longer viable.

## I. FACTS AND PROCEDURAL HISTORY.

Plaintiff alleges that decedent, her late husband, then a Radioman on active duty with the United States Navy, died because of the negligence of the personnel of the Philadelphia Naval Hospital. The facts established by the record are essentially as follows:

Radioman Schwager was admitted to the Philadelphia Naval Hospital on March 12, 1966 suffering from a bleeding stomach ulcer. He had suffered the malady while at home on leave and was taken to the Albert Einstein Medical Center, Southern Division, in Philadelphia, where he was refused admittance because he was a member of the United States Navy. Schwager's wife (administratrix) then called the Naval Hospital, which sent an ambulance to Albert Einstein hospital to transport her husband to the Naval Hospital, where he was admitted the same day. Radioman Schwager died March 31, 1966, following unsuccessful treatment.

The present suit was instituted against the United States on January 9, 1967. An Answer was filed on April 13, 1967, and on December 7, 1967, the Government filed a Motion for Summary Judgment, claiming immunity from suit under the Federal Tort Claims Act as interpreted by the Supreme Court in Feres v. United States, *supra*. That mo-

tion was denied by Judge Harold K. Wood in Schwager v. United States, 279 F.Supp. 262 (D.C.1968). *Inter alia,* Judge Wood stated:

"We cannot say on this record when drawing all reasonable inferences in favor of plaintiff, that reasonable men could not differ. Mere active service is not enough. It was brought out at the argument that Schwager was on leave, got sick at home, was brought first to a civilian hospital and then transported to the Naval Hospital. Whether his presence in a probable military context was incidental to military service will better be determined after it is learned the base to which assigned, his military status at home and in the hospital, the reason for his being transported to a naval hospital and possibly who was the negligent person, if any.

\* \* \* The chain of events relating to military service in Schwager's life seem to have been broken. There was no pattern which led him from his base to a hospital on base as in *Feres*." *Id.* at 264.

The record in the case has now been completed by the addition of the Certified United States Navy Records. They show that Schwager was charged for one day of leave (March 11, 1966), after which he was transferred to active duty at the Naval Hospital. The Records recite that the transfer was for Temporary Duty Under Treatment, pursuant to Naval Personnel Regulation 15909A, pars. 21.2, 21.3. The transfer refers to a reporting date of March 12, and became effective on March 21, 1966, ten days prior to Schwager's death.

The record, for purposes of consideration of a summary judgment motion being completed, the Government renewed its motion on September 22, 1970 and we have heard argument on same.

## II. THE *FERES* PRINCIPLE—THE SUPREME COURT CASES.

In Feres v. United States, *supra*, the Supreme Court held that the Govern-

ment was not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries "arise out of or are in the course of activity incident to" their service. The three consolidated cases decided by *Feres* had in common that each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the Armed Forces.

Considering the relationship between the Government and members of its armed forces, the Court characterized that relationship as being "distinctively federal in character". Amplifying on this statement in United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed. 2d 805 (1963), the Court stated:

"In the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty * * *" *Id.* at 162, 83 S.Ct. at 1858.

There have been a substantial number of District Court and Court of Appeals cases covering a variety of factual situations directed to the issue of whether a plaintiff could avoid *Feres* and maintain suit against the United States under the Federal Tort Claims Act. However, before discussing them, we must first refer to the other two cases in the area in which the Supreme Court has spoken.

In the case of Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L. Ed. 1200 (1949), decided prior to *Feres*, the Court considered the question whether members of the United States Armed Forces could recover under the Act for injuries to one serviceman and death to another serviceman, both on furlough, as the result of a collision

with an Army truck. In upholding the right of recovery, the Court stated:

"* * * we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented." *Id.* at 52, 69 S.Ct. at 920.

In 1954, the Court decided the case of United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). In that case, a veteran was negligently treated in a Veterans Administration hospital for an injury occurring while in the service. The injury occurred while the claimant was a civilian, long after he had been discharged from the service. The Court permitted recovery in the case by finding that the case was governed by *Brooks* and not by *Feres*.

### III. THE CLAIM OF EROSION.

While plaintiff's principal contention is that the *Feres* doctrine is not applicable to the facts of this case, she also contends that the *Feres* doctrine has been "eroded" [1] by the decision of the Supreme Court in the *Brown* case, *supra*, and by the result, and particularly by the reasoning of the Court of Appeals for the Sixth Circuit in Hale v. United States, 416 F.2d 355 (1969). We must turn to the claim of erosion first.

With respect to *Brown*, it is the view of this Court that *Brown*, decided in 1954, did not partially overrule *Feres* as is claimed by some, but rather, that it created an obvious exception to the *Feres* principle. By deciding that the discharged veteran was entitled to sue, it seems to us that the Court adhered to the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty:—there is an obvious distinc-

---

1. This is a phrase used by several courts to discuss the viability of *Feres*. *Cf.* United States v. Lee, 400 F.2d 558 (9th Cir. 1968), rev'g Lee v. United States, 261 F.Supp. 252 (C.D.Cal.1966).

tion between a serviceman, like Schwager, on active duty, and one who has been discharged from service, like Brown.

The facts in *Hale* are as follows: Hale was a serviceman on active duty, but at the time of injury was away from base on pass. While hitchhiking back to base, he was questioned by several MP's who had stopped their vehicle in the outside travel lane on the road and either invited him to ride back to camp or placed him under military orders to get in back of the truck.[2] As Hale moved to the rear of the truck, he was struck by a privately owned automobile which was attempting to avoid collision with the military vehicle by passing on the right side. Judge Edwards, speaking for the Court, expressed the view that "conflicting standards" had been set forth in *Brooks, Feres* and *Brown,* and suggested that the Supreme Court had never to that date had before it a case which required it to make a clear cut choice between the "conflicting standards". He held that he could not, on the facts before him, determine whether Hale's injuries arose out of or in the course of military duty and remanded to the District Court for further findings. From this, Mrs. Schwager contends that the court was deciding that Hale's injuries were not in the course of or incident to military duty, and that neither were her husband's. The biggest problem with this argument is that, on remand, the *Hale* action was dismissed because the district judge found Hale to have been injured while following the specific directions of military policemen, and concluded that the injury *was* incident to military service.[3]

■ We concede that the concept of "injuries arising out of the course of or incident to service" may not always be

easy to apply in view of the myriad of factual situations which may arise, but we do not find the *Brooks* and *Brown* decisions to conflict with *Feres.* Our conclusion that the *Feres* doctrine is still viable stems from: (1) our inability to find any instance where the Supreme Court has rejected it;[4] and (2) our finding of a large number of recent Court of Appeals and District Court cases following it. Among them is Dilworth v. United States, 387 F.2d 590 (1967), in which the Court of Appeals for the Third Circuit held that an action could not be maintained under the Federal Tort Claims Act for the death of an army private who suffered a fatal illness on the ground that the death resulted from his negligent treatment at any Army hospital. The Court confronted the contention that subsequent decisions of the Supreme Court had destroyed the validity of *Feres* and concluded that "nothing could be further from the true fact." The Third Circuit also rejected the "erosion" claim in Sheppard v. United States, 369 F.2d 272, cert. denied 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 230.

We will discuss the other cases following *Feres* and applying it to facts similar to the case at bar in connection with plaintiff's contention that *Feres* does not apply to facts in the instant case. In reality, the claim of erosion is directed principally to the notion that *Feres* must be narrowly construed, and not applied beyond its facts. There is an obvious distinction between malpractice upon a serviceman injured in the line of duty, and one in Schwager's position who became ill while on leave and was treated in the Naval Hospital. However, unfortunately for the plaintiff, the cases rendered the distinction one without a difference as far as applicability of the Federal Tort Claims Act is concerned.

---

2. The record on appeal was not clear as to which.

3. We have been furnished a copy of the unreported opinion by the United States Attorney.

4. The Court, in United States v. Muniz, *supra,* found, "no occasion to question *Feres,* so far as military claims are concerned * * *" 374 U.S. at 159, 83 S.Ct. at 1856.

## IV. DOES *FERES* APPLY TO THE FACTS OF THIS CASE?

The gravamen of Mrs. Schwager's contention that the Federal Tort Claims Act does not apply is that Schwager became ill while at home and was transferred to the Naval Hospital only because the civilian hospital would not accept him. As sympathetic as this position may be, it ignores the settled law of this Circuit that medical officers in service hospitals have a command function over all servicemen in these facilities.

In Bailey v. DeQuevedo, 375 F.2d 72 (3d Cir. 1967), *cert. denied* 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274, the Court held that an enlisted man in the Armed Services of the United States could not maintain an action against an Army medical surgeon for negligence in an operation performed at an army hospital in the line of duty. In reaching this result, Judge Kalodner, speaking for the Court, cited with approval the companion case of Bailey v. VanBuskirk, 345 F.2d 298 (9th Cir. 1965), *cert. denied* 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966), and the Court's language:

> "We *are satisfied that while the army medical corps performs mostly a function of service, it nevertheless has a command function over all officers and enlisted men who are admitted to its facilities during the period of their admission.* The operations were performed by the medical officers in line of duty. It is not yet within the American legal concept that one soldier may sue another for negligent acts performed in the line of duty. \* \* \*" [emphasis added] *Id.* at 298.

Applying the *Bailey* principle, it is clear that the physicians at the Naval Hospital exercise a command function over Schwager at all times relevant to this case.

Accordingly, the fact that Schwager was in such a facility, as well as the fact of the transfer of his duty station to the Naval Hospital, put him squarely within the orbit of *Feres* and its rationale, as explained in the *Muniz* case, *supra.* Moreover, there are two decided cases which, on virtually identical facts, denied the serviceman's right of recovery.

In Buer v. United States, 241 F.2d 3 (7th Cir. 1956), a soldier sustained injuries in an automobile accident while on leave. He was hospitalized at an Army hospital, and while there was injured by the negligence of an Army surgeon. There, as here, in view of Army regulations, Buer's status, was changed from "leave" to "sick in hospital" status, and the hospital became his duty station. The Court held that the suit involved injuries sustained by a member of the Armed Forces incident to service while on active duty, and that the claim was not within the Federal Tort Claims Act. Circuit Judge Schnackenberg, in concurring, expressed the opinion that the fact that the hospital was made Buer's duty station was not even essential to the result reached.

One of plaintiff's principal arguments in opposition to the Government's Motion for Summary Judgment is that the Navy regulation which transferred Schwager's duty station to the hospital is irrelevant and should not be held to bar her claim. This argument, however, does not accord with the views expressed by the Courts of Appeals for the Third and Ninth Circuits in Bailey v. DeQuevedo and Bailey v. VanBuskirk, as well as by two of the three judges in *Buer, supra.*

In the case of Shults v. United States, 421 F.2d 170 (5th Cir. 1969), the Court, in a *per curiam* opinion, held that, where a sailor was struck by an automobile while on liberty and was immediately taken to a military hospital to which he was admitted and treated by military personnel solely because of his military status, whatever happened to him at the hospital and during the course of his treatment was in the course of activity incident to service. Thus the administrator was not permitted to recover under the Federal Tort Claims Act for alleged malpractice, even though the de-

ceased serviceman was still on leave, since it was never formally cancelled prior to his death.

There are numerous other cases which support the government's position. In most of them, the courts seem to apply a "but for" test to determine whether the injury arose incident to military service. Thus, in the case of Chambers v. United States, 357 F.2d 224 (8th Cir. 1966), the Court held that a complaint which alleged that an airman met his death due to the negligence of the Government while he was swimming in the pool at an Army base did not state a cause of action even though the serviceman at the time of the injury was not engaged in the performance of military duty. The Court stated:

> "Even though he might have had a furlough order in his pocket or might have been engaged in swimming for recreation, his claim would be subject to the *Feres* rule and no recovery permitted. As a matter of fact, Airman Chambers' use of the pool, which was a part of the base, was related to and dependent upon his military service; otherwise, he would not have been privileged to use it." *Id.* at 229.

In Gursley v. United States, 232 F.Supp. 614 (D.C.1964), a serviceman sued when the military quarters which he occupied with his family on base were demolished in an explosion at a time when the serviceman was on a three-day pass. In Callaway v. Garber, 289 F.2d 171 (9th Cir. 1961), action was brought on behalf of the estate of a serviceman who was killed as a result of the negligence of another serviceman while riding from a South Dakota military base to Seattle, Washington for special training. In both cases, the courts determined that the injury arose out of activity incident to service, even though at the time of the injury, no on-duty activities were being performed.

## V. CONCLUSION.

We cite the foregoing cases as evidence of the non-erosion of *Feres*[5] and its applicability to the case at bar. We need not decide whether to adopt the "but for" test which, of course, would be dispositive in the Government's favor, since "but for" his service status, Schwager could not have been a patient in the Naval Hospital. It is sufficient to say that, under the facts of the case, we hold that at the time of the alleged malpractice Radioman Schwager was assigned to duty station and subject to the command of the medical officers at the Naval Hospital and was, therefore, engaged in a course of activity arising out of or incident to military service. Feres v. United States; Bailey v. DeQuevedo; Buer v. United States; Shults v. United States, *supra*. Accordingly, the Government's Motion for Summary Judgment will be granted.

---

5. In rejecting the claim that the *Feres* doctrine has lost its vitality, we cannot be unmindful of the fact that, since the *Feres* decision, Congress, despite presumptive awareness of those decided cases, has not in any way corrected the *Feres* ruling by amendment of the Tort Claims Act.