Brian P. McVAN and
Michelle B. McVan

v.

BOLCO ATHLETIC COMPANY

v.

The UNITED STATES of America
DEPARTMENT OF the ARMY.

Civ. A. No. 84–0435.

United States District Court,
E.D. Pennsylvania.

Nov. 20, 1984.

Ronald L. Wolf, Litvin, Blumberg, Matusow & Young, Philadelphia, Pa., for plaintiffs.

Arthur L. Shanker, Glenside, Pa., for defendant/third-party plaintiff Bolco Athletic Co.

Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for third-party defendant U.S.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In this action, plaintiffs Brian and Michelle McVan seek to recover damages for injuries Brian McVan suffered in a softball game at Fort Dix, New Jersey in May 1982.

The alleged injury occurred when plaintiff[1] slid into second base; the design of the base and its anchor allegedly caused severe and multiple injuries to plaintiff's leg.

Plaintiff filed this action against Bolco Athletic Company, the alleged manufacturer of the offending base. Bolco then filed a third-party complaint against the United States, alleging that plaintiff's injuries, if any, were caused by the "negligence or other liability activity" of the Department of the Army. Third-Party Complaint at ¶ 3. The third-party complaint does not allege any particular facts which might give rise to a finding of negligence on the Army's part.

The United States has moved to dismiss the third-party complaint, either under Federal Rule of Civil Procedure 12(b)(1) or under Rule 56(c), because the third-party complaint falls within the *Feres* doctrine, which holds that the Government has not waived sovereign immunity (and therefore cannot be sued) for injuries to those in active military service, when those injuries are "incident to" such service. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). *See also Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). Plaintiff has filed a memorandum in support of the Government's motion.

Bolco opposes the Government's motion on two grounds. First, Bolco urges that it has not had sufficient discovery to respond to a motion for summary judgment. *See* Fed.R.Civ.P. 56(f). Second, Bolco maintains that genuine issues of material fact remain as to the Army's connection with the softball game and Bolco's own relationship to the Army.

Although the Government initially characterized its motion as a motion to dismiss under Rule 12(b), all sides have since treated it as a motion for summary judgment. Accordingly, I will so consider it here. The threshold question is whether Bolco's request for an extension of time in which to

[1] Although both Brian and Michelle McVan are plaintiffs in this action, I use "plaintiff" in this opinion to mean Brian McVan. I adopt this usage for the sake of convenience, and express no opinion on the merits of Michelle McVan's claims in this case.

respond should be granted pursuant to Rule 56(f). If such an extension is not justified under Rule 56(f), I must consider whether, based on the affidavits before the court, there is a genuine issue of material fact that would justify permitting Bolco to go forward with its third-party claim against the Government. Fed.R.Civ.P. 56(c). *See, e.g., Peterson v. Lehigh Valley District Council,* 676 F.2d 81, 84 (3d Cir. 1982); *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir.1981).

### I. *Bolco's Request for a Rule 56(f) Extension of Time*

 Federal Rule of Civil Procedure 56(f) provides relief for a party unable to respond to a motion for summary judgment because of insufficient opportunity for discovery. The purpose of the rule is to prevent premature grants of summary judgment in cases where, given adequate time to obtain discoverable material from the moving party, the party opposing the motion might be able to establish genuine issues of fact which would preclude summary judgment. *See Ward v. United States,* 471 F.2d 667, 670–71 (3d Cir.1973); C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2740 (1983). Under many circumstances, parties seeking relief under Rule 56(f) should be granted that relief "almost as a matter of course." *Ward v. United States,* 471 F.2d at 670; *Costlow v. United States,* 552 F.2d 560, 563–64 (3d Cir.1977). Such is the case particularly where the party opposing the motion possesses critically important evidence and there is some reason for doubt about what that evidence may ultimately show. *See Ward v. United States,* 471 F.2d at 670–71.

At the same time, Rule 56(f) does not provide parties with a doctrinal vehicle for defeating motions for summary judgment based on unsupported speculation about what may be forthcoming if an extension is granted. *Mid-South Grizzlies v. National Football League,* 720 F.2d 772, 779–81 (3d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984). Thus,

the Rule states that a party must submit affidavits showing why it cannot "justify [its] opposition" to the motion in order to receive an extension of time in which to respond. The requirement that affidavits must be filed is no mere mechanical trap for unwary lawyers; rather, it serves the important purpose of preventing delay in cases where there is no basis for supposing that, if only the time for response is stretched out, an issue of fact may emerge. Judge Freedman's exposition of this principle, quoted below, remains apt:

> It is true that Rule 56(f) also authorizes the court in appropriate cases to refuse to enter summary judgment where the party opposing the motion shows a legitimate basis for his inability to present by affidavit the facts essential to justify his opposition; but to take advantage of this provision he must state by affidavit the reasons for his inability to do so and these reasons must be genuine and convincing to the court rather than merely colorable. It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts. In the world of speculation such doubts have an honored place, but in the daily affairs of mankind and the intensely practical business of litigation they are put aside as conjectural.

*Robin Construction Co. v. United States,* 345 F.2d 610, 614 (3d Cir.1965) (quoted in *Mid-South Grizzlies v. National Football League, supra,* 720 F.2d at 779–80).

 Judge Freedman's discussion applies to Bolco's 56(f) motion on two levels. First, Bolco did not file an affidavit stating why it could not now respond to the Government's motion. That omission is by itself sufficient reason to deny Bolco the relief it seeks. *See Mid-South Grizzlies v. National Football League, supra,* 720 F.2d at 780 & n. 4 (citing cases). In addition, the factual uncertainties raised in Bolco's brief are, as I discuss below, either irrelevant to the legal issue raised by the Government's motion or too speculative to constitute potentially "genuine" issues of

fact under Rule 56(c). I will accordingly deny Bolco's Rule 56(f) motion, and proceed to consider the Government's motion for summary judgment pursuant to Rule 56(c).

## II. *The Government's Motion for Summary Judgment*

■ *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), establishes that a serviceman who suffers an injury incident to his military service cannot sue the United States for damages arising out of that injury. In *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Supreme Court held that the *Feres* doctrine bars not only direct actions by service personnel against the Government, but also third-party actions seeking indemnity or contribution for injuries to service personnel incident to their military service. The Government argues that these cases render it immune from suit in this case, because plaintiff's alleged injuries were suffered while plaintiff was on active duty and present on a military base.

Along with two briefs in support of its motion, the Government has submitted two affidavits. In the first affidavit, plaintiff Brian McVan states (1) that at the time of the softball accident he was a Captain in the United States Army, Judge Advocate General Corps; (2) that he "participated in an organized amateur office softball game at Headquarters Command Field at Fort Dix, New Jersey," in which he sustained the injuries which led to this suit; and (3) that "the majority of participants in the aforementioned softball game consisted of active duty servicemen stationed at Fort Dix." The second affidavit is of Robert K. Beske, whose title is stated as "Sports Director, Morale Support Activities Division, Directorate of Personnel and Community Activities, Fort Dix." Mr. Beske states that the slow pitch softball league at Fort Dix is designed "to provide military personnel an opportunity to participate in a sea-

sonal sport," and that participating teams consisted of a mix of active-duty military personnel, retired military personnel, reservists, relatives, and "other individuals having command authorization."

No other affidavits or exhibits have been submitted by any of the parties. Consequently, I accept the statements of plaintiff and Mr. Beske as true for purposes of deciding the Government's motion. At the same time, I recognize that the submissions of the parties must be viewed in the light most favorable to Bolco. Accordingly, the following discussion assumes that plaintiff was neither on duty[2] nor in any way acting under orders at the time of his accident.

■ *Feres* itself holds that service personnel may not maintain suits against the Government "where the injuries rise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). When the injury is not "incident to" the plaintiff's military service, the *Feres* doctrine does not apply and suit is not barred under the Federal Tort Claims Act. *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949).

The line between these two categories is not bright. There is a good deal of language in judicial opinions to the effect that the inquiry is fact-specific and not easily susceptible to clear rules. *See, e.g., Woodside v. United States,* 606 F.2d 134, 141 (6th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Nevertheless, the Court of Appeals for the Third Circuit has delineated four factors to be taken into account in determining whether an injury was "incident to" military service under *Feres:* "the status of the injured soldier at the time of injury, the place of the injury, and the nature of the activity engaged in, and whether the injured party was acting under orders or

---

**2.** By "on duty," I mean that status in which a serviceman is on the job. Plaintiff, in any given day, would have both on- and off- duty time.

This is to be contrasted with "active duty," which refers to an ongoing status of military employment.

compulsion." *Shearer v. United States,* 723 F.2d 1102, 1105 (3d Cir.1983). Thus, claims arising from radiation exposure suffered during military tours of duty are barred by *Feres, Heilman v. United States,* 731 F.2d 1104, 1106–07 (3d Cir. 1984); *Jaffee v. United States,* 663 F.2d 1226 (3d Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982), while claims arising from an off-base kidnapping/murder by an off-duty enlisted man are not barred. *Shearer, supra,* 723 F.2d at 1106.

◼ In the instant case, the four *Shearer* factors do not all point in the same direction. Plaintiff was on active duty at the time of his injury, and the injury occurred on a military base. Plaintiff was not, however, "acting under orders or compulsion." This last fact does not automatically decide the case: in *Thomason v. Sanchez,* 539 F.2d 955, 957 (3d Cir.1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977), the Third Circuit held that vehicular accidents on a military base cannot be the basis for a suit by a soldier against the Government. The plaintiff in that case, although on the base, was not on duty. *Thomason v. Sanchez,* 398 F.Supp. 500, 501 (D.N.J.1975), *aff'd,* 539 F.2d 955 (3d Cir.1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977). *Thomason* thus suggests that the absence of any evidence that plaintiff was acting under orders is a factor to be considered, but is not decisive.

◼ The remaining factor listed by the court in *Shearer*—and the decisive factor in this case—is the nature of the activity in which the soldier was engaged at the time of the injury. 723 F.2d at 1105. There is no factual dispute about what plaintiff was doing when he hurt his leg: he was playing in a softball game on a military base. The game was apparently organized, although the degree of organization is unclear from the affidavits before the court.[3] The game was also, taking the best possible view of the facts for Bolco, not a required activity for plaintiff or any of the other participants.

These facts describe a wholly recreational activity which utilized military facilities and was joined in by military personnel. The activity was not closely related to plaintiff's military work, although participation in it was linked to some extent with military status, as shown by the statement in plaintiff's affidavit that a majority of the participants were military personnel. Plaintiff's Affidavit at ¶ 4. The activity was thus tied to the facilities and organization of the base, but was not part of the official duties of the plaintiff or anyone else.

For purposes of determining the potential liability of the United States under *Feres,* the issue is the relationship between this activity and plaintiff's military status. I begin by noting that this is not a case like *Shearer,* in which the Third Circuit found that such a relationship did not exist. Plaintiff's decedent in *Shearer* was kidnapped and murdered by another enlisted man while on leave and off the military base to which he was assigned. 723 F.2d at 1104. The private who committed the murder, one Andrew Heard, had served

**3.** Plaintiff's affidavit states that plaintiff was injured in "an organized amateur softball game." Plaintiff's Affidavit ¶ 3. Mr. Beske's affidavit states that "[t]he purpose of the slow pitch softball league at Fort Dix, New Jersey is to provide military personnel an opportunity to participate in a seasonal sport." Affidavit of Robert K. Beske ¶ 1. Neither affidavit expressly states that the game in which plaintiff was injured was played as part of the league to which Mr. Beske refers, nor does either affidavit state that that league was organized by Mr. Beske or other military officials at Fort Dix. Because I must resolve all factual ambiguities in Bolco's favor

for purposes of deciding the Government's motion, I therefore cannot conclude that the game was part of a military-organized softball league.

At the same time, the affidavits do establish (1) that the game was played on a military base, (2) that most of the participants were military personnel, Plaintiff's Affidavit ¶ 4, and (3) that the military gave some degree of official sanction to such voluntary recreational activities (thus Mr. Beske's statement about the purpose of the slow pitch softball league). My discussion assumes that this describes the extent of the connection between Fort Dix and the softball game which gave rise to this lawsuit.

time in prison for a murder he committed while stationed in Germany. The plaintiff argued that the Army had negligently failed to discharge or restrict Heard despite recommendations that it do so. *Id.* The Court of Appeals held that the *Feres* doctrine did not bar the plaintiff's action. *Id.* at 1106. In so holding, the court compared the activity at issue in *Shearer* with that involved in actions brought against the United States for medical malpractice at military hospitals:

Although receiving medical treatment in military hospitals may be considered an activity and benefit "incident to military service" and therefore barred under *Feres*, certainly *being kidnapped* off base at gun point can never be perceived as one of the activities or anticipated free benefits of being in the armed services. Thus, there is no legitimate basis on which *Feres* can bar appellant's claim.

*Id.* Unlike the activity at issue in *Shearer*, the activity in the instant case does have some relation to plaintiff's military status. Two important links are established by the affidavits offered by the Government: the participants in plaintiff's activity were mostly other service personnel, Plaintiff's affidavit at ¶ 4, and the activity advanced a military purpose. Affidavit of Robert K. Beske at ¶ 1.

I find those links sufficient to invoke *Feres'* prohibition of suits against the Government for injuries sustained "incident to" military service, despite the fact that plaintiff was not acting under orders

at the time of his injury and that the injury does not arise from any of plaintiff's assigned duties. The *Feres* doctrine is not limited to activities involving the working relationship of soldiers and their superiors. Malpractice claims against military doctors do not ordinarily involve such a relationship,[4] but *Feres* itself found malpractice claims within its scope where the plaintiff is in the military at the time of the alleged malpractice. 340 U.S. at 136–37, 146, 71 S.Ct. at 154–55, 159. *See also Peluso v. United States,* 474 F.2d 605 (3d Cir.) (per curiam), *cert. denied,* 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973). Similarly, automobile accidents between off-duty service personnel do not arise out of a soldier-to-soldier or soldier-to-commander relationship; such accidents nevertheless have been held to fall within the *Feres* doctrine when they occur on the injured party's assigned military base. *See, e.g., Thomason v. Sanchez,* 539 F.2d 955, 957 (3d Cir. 1976); *cert. denied,* 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977); *Watkins v. United States,* 462 F.Supp. 980 (S.D.Ga. 1977), *aff'd,* 587 F.2d 279 (5th Cir.1979). *Cf. Johnson v. United States,* 704 F.2d 1431 (9th Cir.1983) (accident occurred one mile off base and was caused by driver's alcohol consumption which occurred after hours at on-base NCO Club; *Feres* doctrine held not to bar claim).

These cases suggest that the military activities which the *Feres* doctrine seeks to protect include the whole range of activi-

---

**4.** Of course, in some sense every interaction between members of the Armed Forces involves the working relationship of the actors, since even off-duty soldiers are subject to the orders of their superiors. The point is especially true of contact between soldiers one or both of whom is *on* duty. This is the sense in which military doctors have a "command" relationship with the service personnel in their care. *See Bailey v. DeQuevedo,* 375 F.2d 72 (3d Cir.), *cert. denied,* 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274 (1967); *Schwager v. United States,* 326 F.Supp. 1081, 1085 (E.D.Pa.1971).

Nevertheless, there is a substantial difference between the case in which the injured soldier has an ongoing working relationship with the persons alleged to have caused his injury and the case in which no such relationship exists.

In malpractice actions, contact between injured party and tortfeasor is largely limited to the events surrounding the injury. If *Feres* were limited to those situations which involved ongoing soldier-commander relationships, therefore, malpractice actions would not be covered.

*Feres* itself establishes that the immunity doctrine it spawned applies to both sorts of military relationships. The *Feres* opinion decided three separate appeals, two of which involved alleged malpractice by military doctors, and one of which alleged negligent failure to correct a dangerously flawed barracks heating system. *Feres,* 340 U.S. at 136–37, 71 S.Ct. at 154–55. In each of the three cases, the Government was held to be immune from suit. *Id.* at 146, 71 S.Ct. at 159.

ties in which service personnel take part because of their military status. Thus, driving to an on-base auto parts store has been found to be an activity with enough military connection to justify applying *Feres, see Warner v. United States,* 720 F.2d 837 (5th Cir.1983) (per curiam), while driving off-base on vacation is not such an activity. *See United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). And while recreational flying in a barracks aero club triggers *Feres, see Eckles v. United States,* 471 F.Supp. 108 (M.D.Pa. 1979), off-base fights or personal violence, even between servicemen, does not. *See Shearer, supra,* 723 F.2d at 1106.

Under such a standard, on-base recreational activities, such as the softball game which led to this action, are clearly "military" enough to trigger *Feres'* prohibition of suits against the Government. Such recreational activities serve as an outlet for the athletic skills and ambitions of service personnel. They may also serve to develop and maintain the participants' physical condition without the drudgery of required exercises. For these and other reasons, those courts that have considered the issue have found such activities within the scope of the *Feres* doctrine. *See Hass v. United States,* 518 F.2d 1138 (4th Cir.1975) (plaintiff injured while riding horse rented from military-owned stable; *Feres* applied); *Chambers v. United States,* 357 F.2d 224 (8th Cir.1966) (plaintiff's decedent died while swimming in on-base pool; *Feres* applied); *Eckles v. United States,* 471 F.Supp. 108 (M.D.Pa.1979) (plaintiff's decedent killed while flying in barracks aeronautics club; *Feres* applied); *Knight v. United States,* 361 F.Supp. 708 (W.D.Tenn. 1972) (plaintiff's decedent drowned in on-base swimming pool; *Feres* applied), *aff'd,* 480 F.2d 927 (6th Cir.1973).

Bolco nevertheless contends that "many unanswered questions" remain regarding "the relationship of the plaintiff to the softball game and the relationship of the United States Government to Bolco Athletic Company." Defendant's Brief in Opposition to the Government's Motion at 2. These questions, Bolco argues, preclude the granting of summary judgment in this case.

Plaintiff's affidavit defines his relationship to the softball game: he was a participant. Under the cases just cited, no more substantial relationship is necessary to trigger *Feres.* It suffices that plaintiff, a serviceman, participated in a recreational activity with other military personnel using military facilities. See *Eckles, supra,* 471 F.Supp. at 110.

█ The relationship between Bolco and the Government is wholly undefined on this record, but that relationship is also irrelevant to the *Feres* determination I must make. The Third Circuit has expressly rejected the argument that *Feres'* application turns on the activity of the alleged tortfeasor. *Shearer v. United States, supra,* 723 F.2d at 1106.[5] Thus, the nature of the Government's supposed negligence, whether in design or inspection of the base or in organization of the softball game, does not affect *Feres'* application to this case. *Id.*

I therefore hold that the activity in this case—a softball game involving military personnel on a military base—falls within the range of activities covered by the *Feres* doctrine. The nature of the activity is only one of four factors listed in *Shearer,* the others being plaintiff's military status, the

---

**5.** There is language in *Henning v. United States,* 446 F.2d 774 (3d Cir.1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972), that suggests otherwise. *See id.* at 777. *Henning* was, however, expressly considered in *Shearer,* the court finding that *Henning* "did not adopt a tortfeasor status-activity analysis as the lower court suggested." *Shearer, supra,* 723 F.2d at 1106. Thus, the *Shearer* court analyzed the "nature of the activity" exclusively in terms of the

*Shearer* plaintiff's activity at the time of his death: "certainly *being kidnapped* off base at gun point can never be perceived as one of the activities or anticipated free benefits of being in the armed services." *Id.* The allegedly negligent activity in *Shearer*—permitting an emotionally disturbed soldier with a violent criminal record to remain in the Army—was not a factor in the court's *Feres* determination.

accident's location, and whether or not plaintiff was acting under orders. As I discussed earlier, however, two of the other three *Shearer* factors—plaintiff's military status and the accident's location—weigh also in favor of applying *Feres* to bar the third-party action in this case. Accordingly, I hold that *Feres* does apply and would bar plaintiff from instituting this action directly against the Government. It follows that Bolco cannot bring this third-party action against the Government unless the Government's waiver of sovereign immunity is greater as to Bolco than as to plaintiff.

■ Under *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), Bolco is precluded from pursuing, as a third-party action against the United States, a claim which plaintiff could not, by virtue of *Feres*, sue on directly. I have held that plaintiff would be precluded from bringing an action against the Government for damages for the injury alleged here. Bolco is thereby precluded as well.

For the foregoing reasons, Bolco's motion for an extension of time under Rule 56(f) is DENIED, and the Government's motion for summary judgment is GRANTED. An order to that effect is attached.