Kevin GALLIGAN, Plaintiff,

v.

CITY OF PHILADELPHIA, et al., Defendants.

No. CIV. A. 01–288.

United States District Court, E.D. Pennsylvania.

May 15, 2001.

Robert J. Mongeluzzi, David L. Kwass, Saltz, Mongeluzzi, Barrett & Bandesky, P.C., Philadelphia, PA, for plaintiff.

Jerrold P. Anders, White and Williams, Philadelphia, PA, for City of Philadelphia, Philadelphia Water Dept., U.S. Naval Academy Athletic Ass'n., Philadelphia Sports Progress, Philadelphia Convention Visitors Bureau, defendants.

Andrew J. Connolly, Post and Schell, P.C., Philadelphia, PA, Nuriye Uygur, U.S. Attorney's Office, Philadelphia, PA, Mary Theresa Peraria, Post & Schell, PC, Philadelphia, PA, for Contemporary Seating Co., defendant.

James G. Sheehan, Nuriye Uyger, U.S. Attorney's Office, Philadelphia, PA, for U.S., movant.

## MEMORANDUM

KELLY, District Judge.

Before this Court is the United States' Motion to Dismiss the Joinder Complaint of Contemporary Services Corporation ("CSC") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Kevin Galligan ("Mr.Galligan"), a former United States Military Academy ("USMA" or "West Point") cadet, sued several parties for his injuries resulting from a safety railing collapse during a December 5, 1998, Army–Navy football game held at Veteran's Stadium in Philadelphia, Pennsylvania. CSC, one of the Defendants in the action, filed a Joinder Complaint against the United States.[1]

---

1. CSC's Joinder Complaint was filed against     Togo D. West, Jr., Secretary of the United

Based on the Feres doctrine, the United States has filed the instant Motion to Dismiss. For the reasons that follow, the Motion is granted.

## I. BACKGROUND

On or about December 5, 1998, Mr. Galligan, a West Point cadet suffered injuries as a result of a safety railing collapse at an Army–Navy football game held at Veterans Stadium. (Am.Compl., ¶¶ 10, 11.) In the Court of Common Pleas, Philadelphia County, Mr. Galligan sued CSC and several other parties connected with the football game. (*Id.*) CSC's involvement was based on the fact that it was retained to provide security services at the game. (Mem. Law Opp'n Mot. Dismiss, Ex. C.) On or about November 17, 2000, CSC filed a third party Complaint "alleging that, among others, the United States 'w[as] responsible for the safety and security of the plaintiff at the time of the incident.'" (Mem. Law Supp. Mot. Dismiss at 4.)(citing Joinder Compl., ¶ 11.) Because the United States has sovereign immunity, CSC's Joinder Complaint was brought pursuant to the waiver of sovereign immunity found in the Federal Tort Claims Act, 28 U.S.C. section 1346(b) et seq. ("FTCA"). (*Id.* at 4.) On or about January 19, 2001, the United States removed the instant action to this Court. *See* Notice of Removal. Currently, the United States has moved to dismiss CSC's Joinder Complaint under Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction based on the Feres doctrine. The Feres doctrine is a judicially created doctrine whereby "a soldier may not recover under the Federal Tort Claims Act for injuries which 'arise out of or are in the course of activity incident to service.'" *United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)(quoting *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950))..

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(1), when "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Fed. Realty Inv. Trust v. Juniper Props. Group*, No. 99–3389, 2000 WL 45996, at *3 (E.D.Pa.2000) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir.1993), *cert. denied*, 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993)). The district court, when reviewing a motion to dismiss for lack of subject matter jurisdiction, "must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts." *Id.* (citing *Haydo v. Amerikohl Mining, Inc.*, 830 F.2d 494, 496 (3d Cir.1987)). The district court is not confined to the face of the pleadings when deciding whether sub-

States Army; the United States Army; the United States Military Academy; The United States Military Academy Preparatory School; the Army Athletic Association; Richard Danzig, Secretary of the United States Navy; The United States Navy; and the United States Naval Academy Athletic Association. However, "[t]he United States is the exclusive defendant whenever federal employees are sued on common law tort claims arising out of acts within the scope of their employment." *Rashid v. Monteverde & Hemphill*, No. 95–

2449, 1997 WL 360922, at *5 (E.D.Pa.1997), *aff'd*, 149 F.3d 1165 (3d Cir.1998)(citing 28 U.S.C. § 2679(b)(1); *Maclean v. Secor*, 876 F.Supp. 695, 704–05 (E.D.Pa.1995)). In its Motion to Dismiss, the United States requests that it be substituted as the proper joinder Defendant and that the other Defendants be dismissed. Based on 28 U.S.C. section 2679(b)(1) and the fact that CSC did not challenge the United States' request for substitution, the United States will be substituted as the proper joinder Defendant.

ject matter jurisdiction exists. *Id.* (citing *Armstrong World Indus. v. Adams,* 961 F.2d 405, 410, n. 10 (3d Cir.1992)). "In assessing a Rule 12(b)(1) motion, the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings." *Id.* (citing *Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990)). In the case where the defendant attacks jurisdiction with supporting affidavits, "the plaintiff has the burden of responding to the facts so stated." *Id.* "A conclusory response or a restatement of the allegations of the complaint is not sufficient." *Id.* (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir.1982)).

## III. DISCUSSION

The United States' Motion to Dismiss is based upon the Feres doctrine. Relying on the Feres doctrine, the United States argues that "[t]his Court lacks subject matter jurisdiction to adjudicate a third party complaint against the United States for injuries sustained by military personnel incident to service."[2] (Mot. Dismiss at 1)(citing *Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977)). CSC argues that this Court has subject matter jurisdiction because the Feres doctrine is inapplicable to this case since "the injury that Kevin Galligan sustained while at the Army/Navy game ... was not incurred incident to his service with the United States Army." (Mem. Law Opp'n Mot. Dismiss at 5.) Thus, the issue involved in this case is whether the injury sustained by Mr. Galligan arose out of activity incident to his

military service. If Mr. Galligan's injury arose out of activity incident to military service, the Feres doctrine is applicable, and this Court lacks subject matter jurisdiction over this case.

### A. Feres Doctrine

"It is a well-settled rule of law, known as the Feres doctrine, that 'the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the activities arise out of or are in the course of activity incident to service.'" *Swiantek v. United States,* No. 94–5251, 1995 WL 120208, at \*1 (E.D.Pa.1995)(quoting *Feres,* 340 U.S. at 146, 71 S.Ct. 153). The Feres doctrine is premised on three rationales. *Id.* "First, a uniform federal law regarding suits arising from military service is needed in light of the 'distinctively federal' relationship between the government and its military personnel." *Id.* (quoting *Feres,* 340 U.S. at 143–44, 71 S.Ct. 153; *United States v. Standard Oil Co.,* 332 U.S. 301, 305, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)). This rationale is based on "the presumption that Congress would not have intended that suits against the military subject the government to different results based on differing state tort laws." *Id.* (citing *United States v. Johnson,* 481 U.S. 681, 689, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987)). "Second, the Feres doctrine prohibits suits for service-related injuries because such injuries are presumed compensated by 'generous statutory disability and death benefits' provided by the Veterans' Benefits Act, 38 U.S.C. § 301 et seq." *Id.* (citing *Johnson,* 481 U.S. at 689, 107 S.Ct. 2063; *Feres,* 340 U.S. at 144, 71 S.Ct. 153.)

---

**2.** "[T]he Supreme Court held that the Feres doctrine bars not only direct actions by service personnel against the Government, but also third-party actions seeking indemnity or contribution for injuries to service personnel incident to their military service." *McVan v. Bolco Athletic Co.,* 600 F.Supp. 375, 378 (E.D.Pa.1984)(citing *Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977)).

Third, "the Feres doctrine bars actions against the government for service-related injuries because of the concern that allowing such suits would 'involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.'" *Id.* (quoting *Johnson*, 481 U.S. at 690, 107 S.Ct. 2063)(citing *Loughney v. United States*, 839 F.2d 186 (3d Cir.1988); *Estate of Martinelli v. United States*, 812 F.2d 872 (3d Cir.), *cert. denied*, 484 U.S. 822, 108 S.Ct. 82, 98 L.Ed.2d 44 (1987)).

### 1. Injury Incident to Service

The Court of Appeals for the Third Circuit ("Third Circuit") has stated that "the gravamen of the Feres doctrine is that the government is immune from suit when injuries occur incident to service." *O'Neill v. United States*, 140 F.3d 564, 565 (3d Cir.), *cert. denied*, 525 U.S. 962, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998). Deciding whether an injury is incident to military service is not a simple task because there is no bright line between whether an injury was or was not incident to plaintiff's military service. *McVan v. Bolco Athletic Co.*, 600 F.Supp. 375, 379 (E.D.Pa.1984). In fact, "[t]here is a good deal of language in judicial opinions to the effect that the inquiry is fact-specific and not easily susceptible to clear rules." *Id.* (citing *Woodside v. United States*, 606 F.2d 134, 141 (6th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980)).

■ "The Supreme Court has not articulated a specific method for determining whether an injury is 'incident' to military service." *Richards v. United States*, 176 F.3d 652, 655 (3d Cir.1999), *cert. denied*, 528 U.S. 1136, 120 S.Ct. 978, 145 L.Ed.2d

929 (2000). However, the Supreme Court has given some guidance by instructing "courts to examine each case 'in light of the statute as it has been construed in *Feres* and subsequent cases.'" *Id.* (quoting *Shearer*, 473 U.S. at 57, 105 S.Ct. 3039). Courts have considered a number of factors when trying to decipher the incident to military service issue "including: (1) the service member's duty status; (2) the site of the accident; and (3) the nature of the service member's activity at the time of the injury." *Id.* (citing *Dreier v. United States*, 106 F.3d 844, 848 (9th Cir.1996); *Schoemer v. United States*, 59 F.3d 26, 28 (5th Cir.), *cert. denied*, 516 U.S. 989, 116 S.Ct. 519, 133 L.Ed.2d 427 (1995)). Each factor must be examined in light of the totality of the circumstances, therefore, it is not necessarily dispositive if one factor weighs in favor of applying the Feres doctrine. *Id.*

### B. Application of the Feres Doctrine to the Facts of This Case

■ The United States argues that the Feres doctrine is applicable because "Kevin Galligan was injured during an activity 'incident to service.'" (Mem. Law Supp. Mot. Dismiss at 5.) Specifically, the United States argues that: (1) Kevin Galligan was on duty in the United States Army; (2) the nature of the Army–Navy football game is purely military because of the tradition that all cadets represent West Point by attending the game; and (3) Veteran's Stadium, the location of Mr. Galligan's injury, was the responsibility of the United States military on game day.[3] (*Id.* at 6–7.) CSC counters the United States' argument that Mr. Galligan was injured during an activity incident to military ser-

---

**3.** The United States contends that the United States military was responsible for Veteran's Stadium solely for purposes of its Motion to Dismiss. The United States bases this contention on CSC's Joinder Complaint and the fact

that "[a]llegations made by [CSC] in its Joinder Complaint are accepted as true for purposes of evaluating subject matter jurisdiction only." (Mem. Law Supp. Mot. Dismiss at 6 n. 4.)

vice by arguing that the Feres doctrine was not intended to apply to a case such as this and that there is a genuine issue of material fact regarding whether Mr. Galligan's injury was incurred incident to service. (Mem. Law Opp'n Mot. Dismiss at 2–4.)

■ "[T]he military activities which the Feres doctrine seeks to protect include the whole range of activities in which service personnel take part because of their military status." *McVan*, 600 F.Supp. at 381. As noted earlier, this case deals with Mr. Galligan's injury incident to his attendance at the Army–Navy football game. Although attendance at a football game is a recreational activity, this does not automatically preclude application of the Feres doctrine. In fact, "[i]n a range of factual situations, the courts of appeals have held that recreational activities sponsored by the military fall within the Feres doctrine." *Costo v. United States*, 248 F.3d 863, 868–69 (9th Cir.2001)(citing *Pringle v. United States*, 208 F.3d 1220, 1227 (10th Cir.2000)(stating that the Feres doctrine was applicable when a soldier was beaten by gang members after being ejected from a military Morale, Welfare and Recreation ("MWR") club; "The relationship between the Army and service personnel engaged in recreational activities under the Army's MWR program is 'distinctively federal' in character."); *Jones v. United States*, 112 F.3d 299, 301 (7th Cir.), *cert. denied*, 522 U.S. 865, 118 S.Ct. 173, 139 L.Ed.2d 115 (1997)(holding Feres doctrine applicable in medical malpractice suit against military physicians deriving from an injury sustained while training for the Olympics; "[C]ourts have often concluded military personnel acted 'incident to service' and applied the Feres bar in cases arising from service members taking advantage of re-

creational military activities or other military perquisites because their use of the facilities was a consequence solely of their status as members of the military."); *Walls v. United States*, 832 F.2d 93 (7th Cir.1987)(applying the Feres doctrine to an accident involving an airplane that was the property of a recreational Aero Club); *Rayner v. United States*, 760 F.2d 1217 (11th Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985)(holding the Feres doctrine applicable to a case involving elective surgery); *Woodside v. United States*, 606 F.2d 134 (6th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980)(applying the Feres doctrine to an accident involving an airplane belonging to a recreational Aero Club); *Hass ex rel. United States v. United States*, 518 F.2d 1138, 1141 (4th Cir.1975)(holding injury while riding a horse rented from a Marine Corps-operated stable fell under the Feres doctrine because "[r]ecreational activity provided by the military can reinforce both morale and health and thus serve the overall military purpose."); *Chambers v. United States*, 357 F.2d 224, 229 (8th Cir.1966)(holding death in on-base swimming pool "was related to and dependent upon his military service; otherwise, he would not have been privileged to use it.")).

## 1. Mr. Galligan's Duty Status

Mr. Galligan was on duty at the time of his injury at the football game. First, in his Answer to CSC's Motion to Dismiss the Joinder Complaint, Mr. Galligan supports the contention that he was on duty at the time of his injury because he "believes that his attendance at the football game was part of his military service."[4] (Ans.

---

4. Moreover, in his Answer to CSC's Motion to Dismiss the Joinder Complaint, "[Mr. Galli-

gan] does not dispute that pursuant to the Feres doctrine, as a military service man, Mr.

Mot. Dismiss Joinder Compl. at 1.) Second, the United States relies on the declaration of Lieutenant Colonel Creighton Larson ("Lieutenant Colonel Larson"), the Operations Officer for the USMA Corps of Cadets, to establish Mr. Galligan's on duty status. (Mem. Law Supp. Mot. Dismiss, Ex. A.) In his declaration, Lieutenant Colonel Larson states that "[d]uring the 1998 Army–Navy game, Kevin Galligan was a Cadet on duty in the United States Army. His duty that day was to attend the 1998 Army–Navy game." (*Id.* ¶ 6.) He goes on to state that "Cadets are not considered to be 'on leave' status during the game. Cadets are only excused from attendance if they are 'on duty' someplace else." (*Id.* ¶ 5.) In further support of the contention that Mr. Galligan was on duty, Lieutenant Colonel Larson states that "[Mr.] Galligan received medical treatment at Keller Army Community Hospital for injuries he received during the 1998 Army–Navy game." (*Id.* ¶ 8.)

CSC argues that Mr. Galligan was not on duty at the time of his injury. Specifically, CSC argues that "at the time of his injury [Mr. Galligan] occupied a status similar to that of any civilian with respect to his attendance at the Army–Navy game." (Mem. Law Opp'n Mot. Dismiss at 5.) In its Memorandum of Law in Opposition to the Motion to Dismiss, CSC differentiates between on duty status and active duty service. (*Id.*) CSC relies on this distinction for support, but fails to notify the Court of the significance of the distinction in relation to the Feres doctrine. CSC not only fails to cite any case law regarding the significance of such a distinction, but also fails to address Lieutenant Colonel Larson's declaration to the contrary. To further belie the significance

of CSC's distinction in relation to the Feres doctrine, the United States Court of Appeals for the Ninth Circuit in *Archer v. United States,* 217 F.2d 548 (9th Cir.1954), *cert. denied,* 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955), held that a cadet who was killed in a crash of an air force aircraft was in the line of duty at the time of his death. Therefore, in light of the totality of the circumstances, and as a result of the aforementioned reasons, this Court concludes that Mr. Galligan was on duty at the time of his injury.

**2. The Site of the Accident**

In this case, the site of the collapsed safety railing was at Veteran's Stadium in Philadelphia, Pennsylvania. "Philadelphia is the traditional site for the annual Army–Navy Football Game." (Mem. Law Opp'n Mot. Dismiss, Ex. B.) For purposes of this Motion only, and relying on CSC's allegations in its Joinder Complaint, the United States admits that "the location of [Mr. Galligan's] alleged injury—Veteran's Stadium—was the responsibility of the military." *See supra* Section III.A.n.3. Thus, for purposes of this Motion, Mr. Galligan's injury was sustained at a location that was the responsibility of the United States military.

**3. Nature of Mr. Galligan's Activity at the Time of the Injury**

Mr. Galligan's attendance at the Army–Navy game, as well as attendance by other USMA cadets, was "mandatory and . . . an integral part of the USMA tradition designed to instill discipline and order within the corps of cadets while fostering esprit de corps and camaraderie." (Mem. Law Supp. Mot. Dismiss, Ex. A., ¶ 5.) While at the game, to foster the USMA tradition,

Galligan is barred from maintaining suit against the United States because his injuries arose in the course of activity he believed to

be part of his military service." (Ans. Mot. Dismiss Joinder Compl. at 1.)

"[c]adets are ordered to attend the annual Army/Navy football game in dress gray uniform." (*Id.*) On the day of his injury, Mr. Galligan was required to wear his uniform and attend the game with his Company. (*Id.*, Ex. B.) If Mr. Galligan failed to attend the game, he would be disciplined by the regimental board. (*Id.*) Further, although the game started at 12:00 p.m., there was a required formation by all cadets at approximately 9:00 a.m. where Mr. Galligan and his fellow cadets were required to report, form and march as a group into the stadium before the start of the game. (*Id.*) Traditionally, "[a] representative group of cadets marches onto the field prior to the Army–Navy game symbolizing the Corps of Cadets stationed at West Point." (*Id.*, Ex. A.) After Mr. Galligan marched onto the field as part of the West Point representative group, he and the other cadets in his Company were required to sit together in a designated area. (*Id.* Ex. B.) Thus, as a result of the Army–Navy game tradition, Mr. Galligan's actions, and the regimented auspices under which Mr. Galligan was required to attend the game, Mr. Galligan's attendance at the 1998 Army–Navy game was military in nature. ·

Based on the aforementioned reasons, and in light of the totality of these circumstances, Mr. Galligan was injured during an activity incident to military service. At the time of his injury, Mr. Galligan was on duty and his presence at the game was military in nature. Because Mr. Galligan suffered an injury which occurred incident to service, the Feres doctrine applies to this case and Mr. Galligan is barred from pursuing an action against the United States. Therefore, it follows, that CSC is also precluded from pursuing a third party claim against the United States. Thus, the United States' Motion to Dismiss CSC's Joinder Complaint for lack of subject matter jurisdiction is granted.

## IV. CONCLUSION

The United States' Motion to Dismiss is granted because CSC's Joinder Complaint is barred under the Feres doctrine. The Feres doctrine dictates that "the Government is not liable under the [FTCA] for injuries to [service members] where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. 153. Since CSC's Joinder Complaint falls within this doctrine, the Court accordingly dismisses the Complaint for lack of subject matter jurisdiction based on Federal Rule of Civil Procedure 12(b)(1). The Court's jurisdiction over this case was based on the removal of CSC's Joinder Complaint. Since the Joinder Complaint is now dismissed, the Court must remand the action to the Court of Common Pleas of Philadelphia County. *See* 28 U.S.C. § 1447(c); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208 (3d Cir.1997).

An appropriate Order follows.

### *ORDER*

AND NOW, this 15th day of May, 2001, upon consideration of the United States' Motion to Dismiss the Joinder Complaint of Contemporary Services Corporation (Dkt. No. 9), and the Responses and Replies thereto, it is hereby ORDERED that:

1. Togo D. West, Jr., Secretary of the United States Army; the United States Army; the United States Military Academy; The United States Military Academy Preparatory School; the Army Athletic Association; Richard Danzig, Secretary of the United States Navy; The United States Navy; and the United States Naval Academy Athletic Association are DISMISSED as joinder Defendants and the United States is sub-

stituted as the proper joinder Defendant;

2. the Motion to Dismiss (Dkt. No. 9) is GRANTED;

3. all outstanding Motions are DENIED as moot; and

4. pursuant to 28 U.S.C. section 1447(c), the case is REMANDED to the Court of Common Pleas of Philadelphia County.