**Donald H. HAYDO and Patricia A. Haydo, his wife, Appellants,**

v.

**AMERIKOHL MINING, INC.**

No. 86–3767.

United States Court of Appeals, Third Circuit.

Argued June 15, 1987.

Decided Oct. 5, 1987.

Robert P. Ging, Jr., Lee R. Golden (argued), Pittsburgh, Pa., for appellants.

Timothy P. O'Brien (argued), Sikov and Love, P.A., Pittsburgh, Pa., for appellee.

Before SEITZ and MANSMANN, Circuit Judges, and DEBEVOISE, District Judge.[*]

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This appeal presents the question of whether there is subject matter jurisdiction in the federal district court to hear a claim for damages arising from an alleged violation by an operator of the Surface Mining Control and Reclamation Act ("SMCRA"), as amended, 30 U.S.C. 1201, *et seq.* where a state has submitted and the Secretary of the Interior has approved a program for state regulation as contemplated by the Act. We find that there is no federal jurisdiction, and we will affirm the district court's dismissal of the action.

### I.

Donald and Patricia Haydo brought this action for damages for the loss of a water well allegedly due to the coal exploration program of the defendant, Amerikohl Mining, Inc. The following facts are alleged in the complaint. On January 18, 1984 the defendant Amerikohl Mining, Inc. ("Amerikohl") commenced coal exploration activities on the Haydo property under an assigned coal lease and option agreement between the plaintiffs and Amerikohl Land Company. The plaintiffs assert that, prior to the defendant's drilling operations, the plaintiff's well had produced potable water of good quality and quantity for 35 years. Shortly after the drilling began, the quantity of water produced by the plaintiff's well diminished, and by June, 1984 the well had run dry. The plaintiffs demanded that Amerikohl replace their water supply. The demand was refused, whereupon the plaintiffs filed this action for damages in federal court.

### II.

The Haydos complained that the defendant's exploratory drilling adversely affected their water supply and violated the environmental protection standards prescribed by Section 515 of the SMCRA, 30 U.S.C. § 1265. The complaint alleged that the Commonwealth of Pennsylvania, administering the SMCRA under a program approved by the Secretary of the Interior, promulgated regulations pursuant to Section 515 of the SMCRA, 30 U.S.C. § 1265, concerning the reclamation of the prevailing hydrologic balance. The plaintiffs alleged that the defendant's operations contravened both the state regulations and the SMCRA.

After the time for discovery, the defendant moved for dismissal of the action on the ground of the assertedly exclusive jurisdiction of the Pennsylvania courts. As an alternative ground for dismissal the defendant argued that the SMCRA does not prescribe duties for operators and does not govern exploratory drilling of the type performed on the plaintiffs' land. The district court granted the defendant's motion to dismiss the complaint in accordance with the opinion in *Laurel Pipe Line Co. v. Bethlehem Mines Corp.*, 624 F.Supp. 538, 540 (W.D.Pa.1986) (the SMCRA affords exclusive jurisdiction to states administering the Act under an approved program).

We have jurisdiction, under 28 U.S.C. § 1291, over this appeal from the final order of the district court dismissing the complaint.

### III.

The defendant's theory that jurisdiction is exclusive in the courts of Pennsylvania constitutes a facial attack on the complaint by means of a motion pursuant to Fed.R. Civ.P. 12(b)(1), to dismiss the complaint for lack of jurisdiction over the subject matter. To the extent that the defendant argues

---

[*] Honorable Dickinson R. Debevoise of the United States District Court for the District of New Jersey, sitting by designation.

that the activity complained of is not governed by the language of the statute, the motion may be treated alternatively as one pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss for failure to state a claim upon which relief may be granted. Under these unusual circumstances, the procedure would be the same in reviewing either motion: the allegations of the complaint are considered as true so that the disposition of the motion is purely a legal determination. *Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977) (presumption of truthfulness attaches to plaintiff's allegations where 12(b)(1) motion attacks a complaint *on its face* and does not challenge the existence of facts underlying subject matter jurisdiction).

The district court's dismissal of a complaint on either ground raises a question of law subject to plenary review.

### IV.

The Congressional purpose in enacting the SMCRA was to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). Congress sought to accomplish this purpose through "a set of national environmental performance standards to be applied to all coal mining operations and to be enforced by the state with backup authority in the Department of the Interior." H.R.Rep. No 218, 95th Cong., 1st Sess. 57, *reprinted in* 1977 U.S.Code Cong. & Admin.News 593, 595 (hereinafter cited as "Legislative History").

Section 503 of the SMCRA provides that each state which wishes to assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations on nonfederal lands within its borders shall submit a regulatory plan for approval by the Secretary of the Interior. 30 U.S.C. § 1253. Section 504 provides that if a state fails to submit or enforce an acceptable program, the Secretary shall implement a federal program of regulation for the state. 30 U.S.C. § 1254.

Section 515 prescribes environmental protection performance standards to be re-

quired under any permit to conduct surface coal mining operations issued under a state or federal regulatory program. 30 U.S.C. § 1265.

Section 520 of the SMCRA confers jurisdiction on the federal district courts to hear citizen suits to compel compliance with the SMCRA and for damages. 30 U.S.C. § 1270.

### V.

We turn now to the question of whether the district court had jurisdiction over the subject matter of this action. The complaint alleged violations of the Pennsylvania regulatory plan and of the SMCRA itself and asserted subject matter jurisdiction in the district court under 28 U.S.C. § 1331, 1337 and Section 520 of the SMCRA.

### A.

■ We must first determine whether the district court had subject matter jurisdiction under the SMCRA. Section 520 of the SMCRA, in pertinent part, confers jurisdiction on the federal district courts to hear citizen suits to compel compliance with the SMCRA against the United States or any other governmental instrumentality or agency for violations both of the SMCRA and of any rule, regulation, order or permit issued pursuant thereto. 30 U.S. C. § 1270(a)(1). Section 520 also permits a citizen enforcement action against "any other person who is alleged to be in violation of *any rule, regulation, order or permit issued pursuant to this subchapter.*" *Id.* (emphasis added). The act also permits a damage action by "[a]ny person who is injured in his person or property through the violation by any operation *of any rule, regulation, order, or permit issued pursuant to this chapter.*" 30 U.S.C. § 1270(f) (emphasis added).

While citizen suits against state and federal governmental defendants may be predicated directly upon violations of the provisions of the SMCRA, Section 520 does not provide for an action against individual defendants for violations of the act itself.

The principal purpose of the citizen suit provision was to provide "a practical and legitimate method of assuring the *regulatory authority's* compliance with the requirements of the act." Legislative History at 625.

The jurisdictional basis for a citizen suit against a nongovernmental defendant, either to compel compliance or for damages, is an alleged violation of "any rule, regulation, order or permit issued pursuant to this subchapter." 30 U.S.C. § 1270(a)(1), (f). The defendant argues that the district court lacked subject matter jurisdiction in this case because the complaint alleged only violations of the SMCRA itself and of the *state* regulatory plan and Section 520 confers federal jurisdiction only over alleged violations of *federal* regulations.

The defendant argues that Section 520 must be read in conjunction with Section 503 of the SMCRA which provides that a regulatory plan may be submitted for approval by "[e]ach state.... which wishes to assume *exclusive jurisdiction* over the regulation of surface coal mining and reclamation operations," 30 U.S.C. § 1253 (emphasis added). The defendant argues that because Pennsylvania's regulatory plan has been approved by the Secretary, jurisdiction over the alleged violations of the state statute and regulations lies exclusively in the courts of Pennsylvania. We agree.

The plaintiffs urge us to interpret Section 520 to include state rules, regulations, orders or permits as among those "issued pursuant to this subchapter," at least where the state regulation is one required by the SMCRA. 30 U.S.C. § 1270(a)(1), (f). However, Section 520 offers "exclusive" jurisdiction to states obtaining approval of a regulatory plan. The obvious and usual meaning of the word "exclusive" is plain enough, and the plaintiffs suggest no other meaning for this language. The plaintiffs cite us to numerous cases involving citizen suits filed under similar jurisdictional provisions in other environmental protection statutes. However, the issues in all of those cases involve questions of the *primacy* of the jurisdiction of administrative agencies or state courts. The plaintiffs

have cited us to no other statute where, as in the SMCRA, the state is expressly offered "exclusive" jurisdiction to enforce its regulatory program. We have encountered nothing in the statute or the legislative history which leads us to believe that anything other than the ordinary meaning of "exclusive" was intended by the enactors of the SMCRA.

Congress found that "effective and reasonable regulation of surface coal mining operations by the States and by the Federal Government in accordance with the requirements of this chapter is an effective and necessary means to minimize so far as practicable the adverse social, economic, and environmental effects of such mining operations." 30 U.S.C. § 1201(e). However, the statute does not provide for concurrent jurisdiction in the states and federal government. When a state fails to submit, implement, enforce or maintain an acceptable state regulatory program, the Secretary is required to prepare, promulgate and implement a federal program for the state. 30 U.S.C. § 1254(a). Promulgation and implementation of a federal program for a state preempts and supersedes any inconsistent state law and "vests the Secretary with exclusive jurisdiction for the regulation and control of surface coal mining and reclamation operations" taking place within the state. *Id.*

Congress found the imposition of minimum nationwide environmental protection standards necessary to prevent a state from allowing competitive advantage to its own operators through possible production cost savings due to inadequate environmental protection standards. Legislative History at 599. However, Congress recognized that "because of the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations, primary governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation operations subject to this chapter should rest with the States." 30 U.S.C. § 1201(f). In order to allow the individual states to retain this primary responsibility, the statute provided for state jurisdiction over its own operators

to be exclusive once the state plan has been approved.

Interpreting Section 520 to afford federal jurisdiction in this case would render meaningless the Congressional offer in Section 503 of "exclusive" jurisdiction to states obtaining approval of a regulatory plan. Therefore we find that there is no federal jurisdiction under the SMCRA over suits such as this against operators who are alleged to be in violation of an approved state plan.

### B.

■ Next we must determine whether subject matter jurisdiction may be predicated upon the existence of a federal question. Federal jurisdiction under either 28 U.S.C. § 1331 or under 28 U.S.C. § 1337, which confers federal jurisdiction over actions involving federal commerce or antitrust statutes, depends on an action "arising under" federal law. *Yancoskie v. Delaware River Port Authority*, 528 F.2d 722 (3d Cir.1975).

The complaint alleges violations of Sections 512 and 515 of the SMCRA, 30 U.S.C. §§ 1262 and 1265. However, the duty which was allegedly breached, *i.e.*, an operator's duty to restore or replace a water supply which has been contaminated, polluted, diminished or interrupted by operation of a mine, is imposed by state law.[1]

■ The plaintiff argues that the alleged conduct also constitutes a breach of Section 515 of the SMCRA which provides in pertinent part:

(b) General performance standards shall be applicable to all surface coal mining and reclamation operations and shall require the operation as a minimum to—

\* \* \* \* \* \*

(10) minimize the disturbance to the prevailing hydrologic balance at the mine site and in associated off-site areas to the quality and quantity of water in and groundwater systems both during and after surface mining operations and during reclamation by—

\* \* \* \* \* \*

(g) and such other actions as the regulatory authority may prescribe. These sections of the statute merely prescribe minimum performance standards upon which issuance of permits to operators must be conditioned before a state or federal regulatory program may be approved.

30 U.S.C. § 1265.

Section 512 makes the requirements of Section 515 applicable to certain coal exploration operations.[2] By their very terms these sections of the statute merely prescribe minimum performance standards which must be required of applicants for permits under a state or federal regulatory program before the program may be approved by the Secretary. They do not themselves create any rights and duties as between operators and other persons. The SMCRA itself is not violated by an operator's violation of a permit condition, even though the SMCRA requires that the condition be imposed. Therefore this is not an action arising under federal law, and there is no federal jurisdiction under §§ 1331 and 1337.

---

1. Pa.Code, Section 87.119 provides as follows: The operator of any mine which affects a water supply by contamination, pollution, diminution, or interruption, shall restore or replace the affected water supply with an alternative source, adequate in water quantity and water quality, for the purpose served by the supply. For the purpose of this section, the term 'water supply' shall include any existing or currently designated or currently planned water source of supply or facility or system for the supply of water for human consumption or for agricultural, commercial, industrial or any other uses.

2. The defendant argues that the SMCRA does not govern the activities at issue because exploratory drilling does not fit within the Act's general definition of surface coal mining operations and because Section 512 makes the Act applicable only to coal exploration activities "which substantially disturb the natural land surface." The defendant argues that its bore hole, which it alleges was approximately 3 to 4 inches in diameter and 95 feet in depth, is not such a substantial disturbance. We need not reach this issue in light of our holding that Sections 512 and 515 set forth standards for approved regulatory programs and impose no duties on operators themselves.

## VI.

In accordance with the foregoing, we find that the district court lacked subject matter jurisdiction over this action. Therefore, we will affirm the district court's dismissal of the complaint.