

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-13-2005

# Cudjoe v. Dept Veteran Affairs

Precedential or Non-Precedential: Precedential

Docket No. 04-3003

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Cudjoe v. Dept Veteran Affairs" (2005). *2005 Decisions.* Paper 297.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/297

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3003

_____

DERRYEN D. CUDJOE, A Minor Child
By and Through his Natural Guardians and Next Friends,
BARBARETTE and DERRY CUDJOE,

Appellants

v.

DEPARTMENT OF VETERANS AFFAIRS;
ANTHONY J. PRINCIPI, Secretary of Veterans Affairs;
ROGER W. ROBERT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-05367
(Honorable Legrome D. Davis)

_____

Argued May 24, 2005

Before:  SCIRICA, *Chief Judge*,
ALITO and ROSENN, *Circuit Judges*

(Filed:  October 13, 2005)

SHARON A. ZIEGLER, ESQUIRE (ARGUED)
5118 Foxfire Trail
Kingsport, Tennessee 37664
        Attorney for Appellants


SUSAN D. BRICKLIN, ESQUIRE (ARGUED)
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106
        Attorney for Appellees,
        Department of Veterans Affairs and
        Anthony J. Principi, Secretary of Veterans Affairs


EDWARD J. SCHWABENLAND, ESQUIRE (ARGUED)
Schwabenland & Ryan, P.C.
995 Old Eagle Road, Suite 306
Wayne, Pennsylvania 19087
        Attorney for Appellee,
        Roger W. Robert

## OPINION OF THE COURT

SCIRICA, *Chief Judge*.

At issue is whether the United States has waived sovereign immunity to suits for money damages under certain provisions of the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4851 *et seq.*, and the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.*

Plaintiff filed suit against the Department of Veterans Affairs and a private landlord for unlawfully failing to disclose lead paint contamination in a leased apartment. Finding no express waiver of sovereign immunity, the District Court dismissed the claims for lack of subject matter jurisdiction. It also declined to exercise supplemental jurisdiction over related causes of action under state law. We will affirm the judgment on waiver of sovereign immunity, but vacate and remand the claims against the landlord for further proceedings.

## I.

Plaintiff Derryen Cudjoe filed a complaint, by and through his natural guardians and next friends Barbarette and Derry Cudjoe, alleging the Department of Veterans Affairs and landlord Roger W. Robert violated federal law by failing to disclose information concerning lead contamination when his

3

family leased an apartment in 2000 at 197 East 198th Street, Chester, Pennsylvania.[1] Cudjoe asserts federal causes of action under the Residential Lead-Based Paint Hazard Reduction Act and the Toxic Substances Control Act (Count I), as well as common law claims of negligence (Count II), against the Department of Veterans Affairs and Robert. The complaint also includes common law claims of negligent misrepresentation and omission (Count III), and intentional misrepresentation and omission (Count IV), against Robert alone.

After residing in the apartment for several months, Cudjoe, then two years old, tested positive for high concentrations of lead in his blood. The family vacated the apartment. The Bureau of Health of the City of Chester examined the property in November 2000, and found dangerous levels of lead paint and dust throughout the premises. Nevertheless, the complaint was not filed until September 24, 2003.

Robert answered the complaint, counter-claimed that Cudjoe's injuries were caused by his parents, and brought cross-claims against the Department of Veterans Affairs for liability,

---

[1] Cudjoe alleges the Department of Veterans Affairs held record title to the property, while Robert held a possessory and/or other ownership interest. The Department of Veterans Affairs disputes that it owned the property at the relevant time, but the issue was never reached because the case was dismissed for lack of subject matter jurisdiction.

4

indemnification and/or contribution. Without filing an answer, the Department of Veterans Affairs moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), contending that neither the Residential Lead-Based Paint Hazard Reduction Act nor the Toxic Substances Control Act, alone or in conjunction, waived the government's sovereign immunity against private suits for money damages. The Department of Veterans Affairs argued Cudjoe should have proceeded instead under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* Cudjoe, however, failed to exhaust his administrative remedies under the Federal Tort Claims Act, and his claim is now barred by its two-year statute of limitations, 28 U.S.C. § 2401(b). Cudjoe argued in response that he was not required to proceed under the Federal Tort Claims Act because the Residential Lead-Based Paint Hazard Reduction Act and the Toxic Substances Control Act, in conjunction with one another, waive sovereign immunity and provide an independent cause of action. The District Court granted the government's motion to dismiss, *Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs*, 2004 WL 1447834 (E.D. Pa. Jun. 28, 2004), and Cudjoe filed this timely appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291 over the appeal from the order granting the motion to dismiss for lack of subject matter jurisdiction. In this facial attack under Federal Rule of Civil Procedure 12(b)(1) challenging the court's subject matter jurisdiction, we treat the allegations in the complaint as

5

true, making the disposition of the motion a purely legal determination. *Haydo v. Amerikohl Mining, Inc.*, 830 F.2d 494, 495-96 (3d Cir. 1987) .  Our review is plenary.  *Id*.

## III.

Cudjoe's contention that the United States has waived sovereign immunity to private suits claiming money damages for failure to disclose lead-paint contamination draws on separate provisions in the Toxic Substances Control Act and the Residential Lead-Based Paint Hazard Reduction Act.[2] Specifically, he claims the waiver of sovereign immunity with respect to lead paint in 15 U.S.C. § 2688 exposes the United States not only to the Toxic Substances Control Act's penalties, but also to the private cause of action for treble damages under the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d(b)(3).  Cudjoe argues these provisions provide him with a right to sue the Department of Veterans Affairs directly, without using the procedures set forth in the Federal Tort Claims Act.

---

[2]As discussed more fully in part B, *infra*, the relevant provisions were enacted at the same time as part of Title X of the Housing and Community Development Act of 1992, an omnibus housing bill signed into law on October 28, 1992. The provisions were subsequently codified under separate titles of the United States Code.

We reproduce and summarize the provisions at issue. The waiver of sovereign immunity with respect to lead paint in the Toxic Substances Control Act states in part that:

> Each department, agency, and instrumentality of executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in a lead-based paint hazard, and each officer, agent, or employee thereof, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for certification, licensing, recordkeeping, or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief) respecting lead-based paint, lead-based paint activities, and lead-based paint hazards in the same manner, and to the same extent as any nongovernmental entity is subject to such requirements, including the payment of reasonable service charges. The Federal, State, interstate, and local substantive and procedural requirements referred to in this subsection include, but are not limited to, all administrative orders and all civil and administrative penalties and fines regardless of whether such penalties or

7

fines are punitive or coercive in nature, or whether imposed for isolated, intermittent or continuing violations. The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement (including, but not limited to, any injunctive relief, administrative order, or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge). The reasonable service charges referred to in this section include, but are not limited to, fees or charges assessed for certification and licensing, as well as any other nondiscriminatory charges that are assessed in connection with a Federal, State, interstate, or local lead-based paint, lead-based paint activities, or lead-based paint hazard activities program.

15 U.S.C. § 2688. The provision submits entities of the federal government to any federal, state or local "substantive and procedural requirement" regarding lead paint hazards, waiving the United States' sovereign immunity to such requirements.

The Residential Lead-Based Paint Hazard Reduction Act is a disclosure statute requiring a seller or lessor of residential target housing (1) to provide the purchaser or lessee with a lead hazard information pamphlet (as described in 15 U.S.C. § 2686); (2) to disclose the known or possible presence of lead-based

8

paint or other lead hazards; (3) to provide information about lead hazards; and (4) to allow the purchaser or lesseee a ten-day risk assessment period.[3]  42 U.S.C. § 4852d(a).  A seller or lessor who knowingly violates these requirements is subject to the following penalties:

> (1) Monetary penalty
> Any person who knowingly violates the provisions of this section shall be subject to civil money penalties in accordance with the provisions of section 3545 of this title.
>
> (2) Action by Secretary
> The Secretary [of Housing and Urban Development] is authorized to take such lawful action as may be necessary to enjoin any violation of this section.
>
> (3) Civil liability
> Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an

---

[3]Target housing is defined as "any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than 6 years of age resides or is expected to reside in such housing) or any 0-bedroom dwelling." 40 C.F.R. § 745.103.

amount equal to 3 times the amount of damages incurred by such individual.

(4) Costs
In any civil action brought for damages pursuant to paragraph (3) the appropriate court may award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails.

(5) Prohibited act
It shall be a prohibited act under section 409 of the Toxic Substancess Control Act [15 U.S.C. § 2689] for any person to fail or refuse to comply with a provision of this section or with any rule or order issued under this section. For purposes of enforcing this section under the Toxic Substancess Control Act [15 U.S.C. § 2601 *et seq.*] the penalty for each violation applicable under section 15 of that Act [15 U.S.C. § 2615] shall not be more than $10,000.

42 U.S.C. § 4852d(b)(1)-(5). Subsections (1) and (2) provide the Secretary of Housing and Urban Development with the power to impose monetary penalties and seek injunctions in federal court for violations of § 4852d(a)'s disclosure requirements. Subsections (3) and (4) create a private right of action for treble damages and costs against any person who

violates the disclosure requirements. Subsection (5) defines non-disclosure of lead-paint hazards as a "prohibited act" under the Toxic Substances Control Act, making it subject to enforcement by the Environmental Protection Agency.

The crux of Cudjoe's appeal is that § 4852d(b)(3)'s private suit for money damages constitutes a "substantive and procedural requirement" to which the United States has waived immunity under 15 U.S.C. § 2688. In support of this view, Cudjoe points out that § 2688, though codified in the Toxic Substances Control Act, grew out of the same resolution in the House of Representatives (H.R. 5334), public law (P.L. 102-550) and section of the public law (Title X) as the Residential Lead-Based Paint Hazard Reduction Act. Cudjoe contends that the statute as enacted indicates that Congress intended to subject federal agencies to direct liability. Cudjoe also relies on the Environmental Protection Agency's assertion in its Rule Enforcement Policy handbook that it can enforce the Residential Lead-Based Paint Hazard Reduction Act against federal agencies that fail to comply with the disclosure requirements of 42 U.S.C. § 4852d(a) while acting as seller or lessor.

## A.

A waiver of sovereign immunity must be express and unambiguous in order to confer federal courts with subject matter jurisdiction. *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000); *see also United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 514 (1940) ("Consent alone gives jurisdiction to

11

adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void.").  A waiver "must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  With respect to its scope, any waiver of sovereign immunity must be strictly construed in favor of the sovereign.  *Orff v. United States*, 125 S.Ct. 2606, 2610 (2005).  "The terms of [the] waiver define the extent of the court's jurisdiction.  *United States v. Mottaz*, 476 U.S. 834, 841 (1986).

In interpreting the scope of a waiver of sovereign immunity, we begin with the plain language of the statute. *See New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, *Inc.*, 101 F.3d 1492, 1498 (3d Cir. 1996).  As noted, the plain text of section 2688 of the Toxic Substances Control Act expressly waives sovereign immunity with respect to any federal, state, interstate and local "substantive and procedural requirements" with respect to lead-based paint.  15 U.S.C. § 2688.  The statute lists several examples of substantive and procedural requirements, including,  "any requirement for certification, licensing, recordkeeping, or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief."  *Id.*  The statute further states that such requirements include, but are not limited to, "any injunctive relief, administrative order, or civil or administrative penalty or fine . . . or reasonable service charge." *Id.*

At issue is whether the private right of action for treble money damages under the Residential Lead-Based Paint Hazard Reduction Act is one of the "substantive and procedural requirements" to which the government has waived immunity in 15 U.S.C. § 2688. Because a waiver of sovereign immunity must be unambiguously expressed and may not be implied, *Pena*, 518 U.S. at 192, and must be strictly construed in favor of the sovereign, *Orff*, 125 S.Ct. at 2610, we will not interpret "substantive and procedural requirements" to include a private suit under 42 U.S.C. § 4852d(b)(3).

Notably absent from the listed examples of substantive and procedural requirements is any explicit reference to a private right of action for money damages. The only language in 15 U.S.C. § 2688 that perhaps comes close is the submission to any "civil penalty . . . imposed[.]" But a civil penalty is defined as "a fine assessed for a violation of a statute or regulation." *Black's Law Dictionary* 1168 (8th ed. 2004). The example given in the dictionary is "the EPA levied a civil penalty of $10,000 on the manufacturer for exceeding pollution limits." *Id.* Similarly, the Residential Lead-Based Paint Hazard Reduction Act itself distinguishes between "monetary penalties" (as enforced by HUD under 42 U.S.C. § 3545(f)) on the one hand, and "civil liability" on the other. *Compare* 42 U.S.C. § 4852d(b)(1) *with* 42 U.S.C. § 4852d(b)(3). Because an express, unambiguous waiver is required to waive sovereign immunity, we will not construe "civil penalty" under 15 U.S.C. § 2688

13

broadly to include the private suit for money damages available under 42 U.S.C. § 4852d(b)(3).

Cudjoe contends nonetheless that because the "substantive and procedural requirements" referred to in 15 U.S.C. § 2688 are "not limited to" the examples listed, the action for treble damages under 42 U.S.C. § 4852d(3) constitutes such a requirement. Cudjoe reads too much into these three words, which provide only that the United States may be subject to "Federal, State, interstate, and local substantive and procedural requirements" beyond the examples given in the text of the statute. In our view, these words cannot be interpreted to provide that a private suit for money damages is a "substantive and procedural requirement."

Cudjoe's call for a broad reading of the waiver in 15 U.S.C. § 2688 runs counter to applicable law on waivers of sovereign immunity. The required standard for finding statutory waivers to actions for tort damages is that the waiver be unambiguous. Language subject to varying interpretations will not be construed as a waiver. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37 (1992) ("The foregoing are assuredly not the only readings of [the statute], but they are plausible ones – which is enough to establish that a reading imposing monetary liability on the Government is not 'unambiguous' and therefore should not be adopted." (finding no waiver of sovereign immunity in Section 106 of the Bankruptcy Code)); *see also Lane*, 518 U.S. at 192 ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of

14

sovereign immunity must extend unambiguously to such monetary claims."). Congress is aware of this standard, and had it intended to waive immunity to suits for damages, it would have used more explicit language to do so. *Cf.* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances").[4]

We believe the scope of 15 U.S.C. § 2688 is more narrow. Construing the waiver in favor of the sovereign, its plain language subjects the United States to lead-paint requirements and related penalties, such as fines imposed by the

[4]Cudjoe speculates that Congress may have intended to permit plaintiffs to file tort suits against the United States directly under 15 U.S.C. § 2688 and 42 U.S.C. § 4852d(b)(3) in order to bypass one of the Federal Tort Claims Act's exceptions. One unreported opinion has held that the act's negligent misrepresentation exception, 28 U.S.C. 2680(h), bars non-disclosure claims against the United States under the Residential Lead-Based Paint Hazard Reduction Act. *See Wallace v. United States*, 2004 WL 63503, at *1 (D.R.I. Jan. 8, 2004). Regardless, the language in 15 U.S.C. § 2688 is not sufficiently clear to persuade us that Congress intended to supplant the Federal Tort Claims Act's procedures by providing a separate avenue for private suits for money damages. In order to waive sovereign immunity, Congress would have to express its intent unambiguously. It has not done so here.

15

EPA or state or local regulators. It does not expressly permit private suits for money damages against the government outside of the procedures of the Federal Tort Claims Act.

**B.**

Cudjoe bolsters his broad reading of 15 U.S.C. § 2688 with an argument based on the statute's enactment. Specifically, he argues the codification of the relevant statutory provisions under different sections of the United States Code should not be dispositive on whether 15 U.S.C. § 2688 waives sovereign immunity to the private cause of action under 42 U.S.C. § 4852d(b)(3). That the two provisions were enacted in the same title (Title X–Residential Lead-Based Paint Hazard Reduction Act of 1992) of the same public law (Pub.L. 102-550), he contends, compels the conclusion that 15 U.S.C. § 2688's waiver applies to the civil remedy provided in 42 U.S.C. § 4852d(b)(3). Our reading of the statute as originally enacted does not yield the same interpretation.

Title X of Pub. L. 102-550 is divided into five subtitles, of which two are relevant here: subtitle A – Lead-Based Paint Hazard Reduction, which contains the lead-paint disclosure requirement and penalty provisions (42 U.S.C. §§ 4852d(a) and 4852d(b)), and subtitle B – Lead Exposure Reduction, which contains the limited waiver of sovereign immunity titled "Control of lead-based paint hazards at federal facilities" (15 U.S.C. §2688). Subtitle B, unlike subtitle A, is not a stand-alone statute but an amendment to the Toxic Substances Control Act.

16

Congress's decision to include the waiver of sovereign immunity as an amendment to the Toxic Substances Control Act – a statute which notably provides only for EPA enforcement of fines and penalties and not for money damages – bears emphasis. Cudjoe would have a stronger argument if Congress had decided to place the waiver in subtitle A – which at least contains a provision allowing suits for money damages against private parties. Instead, it chose to place the immunity provision in subtitle B, which does not.[5] The placement of the waiver within the statutory scheme and its plain language fall short of meeting the requirement that a waiver be unequivocally expressed in statutory text. *Lane*, 518 U.S. at 192.

## C.

Cudjoe cites the Environmental Protection Agency's own interpretation of the statutes in support of his contention that the United States has waived immunity to the private suits for

---

[5]The only citizens' suits allowed under 15 U.S.C. § 2619 are to enjoin violations of the Toxic Substances Control Act, not for money damages. Courts have held that the Toxic Substances Control Act does not permit private citizens to pursue either civil penalties available under the statute (which may only be imposed by the EPA), *see, e.g., Pottstown Indus. Complex v. P.T.I. Servs., Inc.*, 1992 WL 50084, at *7-8 (E.D. Pa., Mar. 10, 1992) or compensation for personal injuries, *see e.g., Sipes ex rel. Slaughter v. Russell*, 89 F. Supp. 2d 1199, 1204-05 (D. Kan. 2000).

damages under the Residential Lead-Based Paint Hazard Reduction Act.[6] But the EPA handbook states only that the

---

[6]The relevant section of the EPA handbook, titled "Disclosure Rule Enforcement Response Policy–Applicability to Federal Facilities," states:

> As discussed in Section III below, the Disclosure Rule defines "Seller" and "Lessor" to include government agencies. Thus, when a Federal facility or government agency is the Seller or Lessor of target housing as defined in the statute and the rule, the requirements of [42 U.S.C. § 4852d] and the Disclosure Rule apply to such facility or agency.

> [42 U.S.C. § 4852d(b)(5) makes a violation of the Disclosure rule a prohibited act under [15 U.S.C. § 2689] and the facility or agency is then subject to EPA enforcement authority under [15 § U.S.C. § 2615]. . . . The Disclosure Rule contains Federal requirements respecting lead-based paint, lead-based paint activities, and lead-abased paint hazards. Therefore, Federal facilities are subject to the Disclosure Rule requirements.

Environmental Protection Agency, *Section 1018 – Disclosure Rule Enforcement Response Policy* 3-4 (1999). The EPA distinguishes between the Disclosure Rule and the Residential

18

Residential Lead-Based Paint Hazard Reduction Act's disclosure requirements apply to federal entities. Nowhere does it state that the United States is subject to the private suits for money damages under § 4852d(b)(3).

This omission is consistent with our reading of 42 U.S.C. § 4852d(b)(5). The purpose of this section of the Residential Lead-Based Paint Hazard Reduction Act is to make violations of the disclosure requirements of 42 U.S.C. § 4852d subject to EPA enforcement. Section 4852d(b)(5) makes non-disclosure a "prohibited act" under the Toxic Substances Control Act, subjecting the responsible party to EPA fines or penalties. In other words, the provision imports EPA enforcement under the Toxic Substances Control Act into the Residential Lead-Based Paint Hazard Reduction Act as an additional penalty. It does not export the private right of action of § 4852d(b)(3) into the Toxic Substances Control Act's limited waiver of sovereign immunity, 15 U.S.C. § 2688.

In sum, neither plain language, statutory structure nor the interpretation in the EPA handbook persuades us that Congress intended, in 15 U.S.C. § 2688, to allow private citizens to sue

Lead-Based Paint Hazard Reduction Act itself. The "Disclosure Rule" as referred to in the EPA handbook, means the regulations for the disclosure of lead-based paint promulgated by EPA and HUD pursuant to the Residential Lead-Based Paint Hazard Reduction Act, published on March 6, 1996, and codified at 40 C.F.R. pt. 745(F) and 24 C.F.R. pt. 35(H).

the United States directly under 42 U.S.C. § 4852d(b)(3), while bypassing the procedures and requirements of the Federal Tort Claims Act. Therefore we will affirm the dismissal of Cudjoe's claims against the Department of Veterans Affairs.

## IV.

The District Court also dismissed the federal statutory claims and pendant state law claims against the landlord Roger W. Robert. This error appears to have stemmed from confusion over whether Robert was a representative of the Department of Veterans Affairs or a private citizen.

42 U.S.C. § 4852d(b)(3) plainly creates a private right of action for damages caused by a private party's violation of the Residential Lead-Based Paint Hazard Reduction Act's disclosure requirements. It was clarified at oral argument that Robert is a private citizen unaffiliated with the Department of Veterans Affairs. Therefore, the court had federal question subject matter jurisdiction over Cudjoe's claims against him. *See* 28 U.S.C. § 1331. It also appears the District Court could have exercised supplemental jurisdiction over Cudjoe's state-law claims against Robert, since the claims arise out of a common nucleus of operative facts. *See* 28 U.S.C. § 1367. We will vacate the dismissal of these claims and remand for further proceedings.

20

## V.

We turn to the matter of standing, an issue briefed by the parties on appeal but not addressed by the District Court because it dismissed all claims for lack of subject matter jurisdiction. The government and Robert contend Cudjoe lacks standing to sue under 42 U.S.C. § 4852d because he is neither the purchaser or lessee of the contaminated property. Cudjoe argues his parents can properly maintain "next friend" prudential standing. He also asserts standing as an intended beneficiary of the lease agreement and a designated tenant in the lease. In the alternative, Cudjoe contends he should be permitted as a matter of right to amend his complaint to substitute his parents as plaintiffs.[7]

The regulations implementing the Residential Lead-Based Paint Hazard Reduction Act define "lessee" as "any

---

[7]We note that changing the parties may or may not alter the measure of damages available under the Residential Lead-Based Paint Hazard Reduction Act. *See* John P. Fensler & Leonard A. Bernstein, *Lead Poisoning at Home: New Federal Disclosure Duties*, 26 Real Est. L.J. 7, 17-18 (1997) ("[S]ince [the RLBPHRA] is a disclosure statute, one can only conjecture what such damages might be. The reduced value of the bargain weighed down by the presence of lead? Any lead poisoning injuries that may ensue? Direct damages? Consequential damages? Class actions? What the buyer or tenant would have done if he or she had received the disclosure?")

21

entity that enters into an agreement to lease, rent, or sublease target housing, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agencies, Indian tribes, and nonprofit organizations." 24 C.F.R. § 35.86. Interpreting this language, certain courts have held that non-lessee minor children may not sue under the Residential Lead-Based Paint Hazard Reduction Act because they are not purchasers or lessees. *See L.B. III v. Hous. Auth. of Louisville*, 345 F. Supp. 2d 725, 729 (W.D. Ky. 2004); *Gladysz v. Desmarais*, 2003 WL 1343033, at *2 (D.N.H. Mar. 17, 2003). Nonetheless, we have held that a person without express statutory standing may still have standing to sue if the person meets the minimum requirements for Article III standing as well as the additional elements of prudential standing. *See Davis ex rel. Davis v. Phila. Hous. Auth.*, 121 F.3d 92, 101 (3d Cir. 1997) (holding minor and his mother, as successor tenants, had prudential standing to sue under the Lead-Based Paint Poisoning Prevention Act because they were intended beneficiaries and within the zone of interests intended to be protected by the statute).

We will allow the District Court to address the standing issues in the first instance. On remand, the District Court will make its own determinations regarding Cudjoe's standing under the Residential Lead-Based Paint Hazard Reduction Act, and whether he may amend his complaint.

22

## VI.

We will affirm the dismissal of counts I and II against the Department of Veterans Affairs and the Secretary of Veterans Affairs. We will vacate the dismissal of the claims against Roger W. Robert and remand them to the District Court for further proceedings consistent with this opinion.