**ALBION FRANCIS, Plaintiff**

**v.**

**THOMAS J. RIDGE, in his official capacity as Secretary of Homeland Security; TRANSPORTATION SECURITY ADMINISTRATION; U.S. DEPARTMENT OF HOMELAND SECURITY; UNITED STATES OF AMERICA, Defendants**

Civil No. 2003/0039

District Court of the Virgin Islands

Division of St. Croix

December 27, 2005

FINCH, *Judge*

## MEMORANDUM OPINION

(December 27, 2005)

THIS MATTER comes before the Court on Defendants' Motion to Dismiss.[1] Having heard the oral arguments of counsel on December 8, 2005, examined the briefs prepared by the parties, and taken this matter under advisement, the Court issues the following ruling.

---

[1] Defendants' motion also sought Judgment on the Pleadings and a Motion for Summary Judgment, but these motions were later withdrawn due to factual disputes that were brought to light in Plaintiff's Opposition.

## I. FACTUAL BACKGROUND

Plaintiff, Albion Francis, is an African-American male who wears his hair in a style known as dreadlocks. The Transportation Security Administration (hereinafter "TSA") is a federal agency formed after September 11, 2001, to provide for airport screening and security.

In October 2002, TSA hired Francis to work as an airport-screening officer at the Henry Rohlsen Airport located on St. Croix, Virgin Islands. During a swearing-in ceremony for all new TSA screeners, TSA management informed all of the screeners that TSA had established a mandatory grooming policy for uniformed employees.

During an orientation session that took place approximately one week later, TSA management noticed that Plaintiff, among other new employees, had hairstyles that were not conforming to TSA's grooming policy. Management informed Plaintiff that he was required to conform to the grooming policy. Plaintiff resigned shortly thereafter.[2]

On March 11, 2003, Plaintiff filed this case alleging a single claim under the Religious Freedom Restoration Act (hereinafter "RFRA"). Plaintiff alleges that TSA's grooming policy, as applied to Plaintiff, violates the RFRA. Specifically, Plaintiff alleges that the grooming policy's rule against dreadlocks substantially burdens Plaintiff's sincerely held religious beliefs and does not further a compelling government interest.

Defendants filed the above-referenced motions claiming that: (1) this Court lacks subject matter jurisdiction because RFRA is preempted by Title VII of the Civil Rights Act; and that (2) Plaintiff's claim is barred for failure to exhaust Title VII's mandatory administrative remedies.

## II. STANDARD OF REVIEW

Defendants are seeking dismissal of this case based on lack of subject matter jurisdiction under Rule 12(b)(1). In a motion to dismiss for lack of subject matter jurisdiction, a court treats the allegations in the complaint as true, making the disposition of the motion a purely legal determination. *Haydo v. Amerikohl Mining, Inc.*, 830 F.2d 494, 495-96 (3d Cir. 1987). The party asserting jurisdiction bears the burden of

---

[2] There is a dispute as to whether TSA management told Francis to cut his hair or resign or whether Francis resigned due to other reasons. This dispute is irrelevant for purposes of this motion.

showing that its claims are properly before the court. *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995).

## III. DISCUSSION

Defendants seek a dismissal based on two arguments: (1) Title VII preempts RFRA religious accommodations claims by federal employees; and (2) Plaintiff failed to exhaust his administrative remedies.

### A. Title VII Preempts the RFRA

Defendant contends that Title VII of the Civil Rights Act of 1964 preempts Plaintiff's RFRA claim because Title VII is the only remedy available for an employment discrimination claim.

The RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." 42 U.S.C. § 2000bb-1(a). Subsection (b) provides an exception in which the government may substantially burden a person's exercise of religion if (1) it furthers a compelling governmental interest; and (2) it is the least restrictive means of furthering that compelling governmental interest. *Id.* at § 2000bb-1(b)(1) and (2). Lastly, this Act provides a claim or defense in a judicial proceeding to a person whose religious exercise has been burdened by the government. *Id.* at § 2000bb-1(c).

The RFRA was passed in 1993 for the purpose of restoring:

> [t]he compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972), and to guarantee its application in all cases where the free exercise of religion is substantially burdened; and to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

*Id.* at § 2000bb(b).

Essentially, Congress passed this law to legislatively overrule *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990), where the Court held that neutral laws of general applicability that burden religious exercise do not violate the First Amendment.

Defendants cite *Brown v. General Serv. Administration*, 425 U.S. 820 (1976), in support of their argument. In that case, the Supreme Court stated that Title VII of the Civil Rights Act of 1964 is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* 828-29. While *Brown* was decided in 1976, roughly seventeen years before the passage of the RFRA, courts following *Brown* have also indicated that Title VII is the only remedy available for an employment discrimination claim. See *Rivera-Rosario v. United States Dep't of Agric.*, 151 F.3d 34, 38 (1st Cir. 1998); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997); *Owens v. United States*, 822 F.2d 408, 410 (3d Cir. 1987). Furthermore, Congress has also stated that Title VII should not be affected by the passing of RFRA. *See* S. REP. NO. 103-111, at 12-13 (1993) (stating that "[n]othing in this act shall be construed as affecting religious accommodation under title VII of the Civil Rights Act of 1964"). Lastly, the only three cases that have dealt with this issue have all held that Title VII preempts the RFRA. See *Dorsey v. Roche*, 00-21070 (N.D. Cal. 2002) (holding that RFRA claim is preempted by Title VII based on legislative history of RFRA and Supreme Court holding in *Brown*); *Reed v. Slater*, 98-1298 (D. Colo. 2001); *Molotsky v. Henderson*, 1999 U.S. Dist. LEXIS 2985 (E.D. Pa. 1999) (dismissing RFRA claim based on RFRA's text and legislative history).

Plaintiff argues that this Court should not follow those cases because they all resorted to legislative history to interpret a clear statute. Thus, as Plaintiff argues, these cases violated a fundamental tenet of statutory interpretation that there is no need to look at legislative history when a statute is clear and unambiguous. Plaintiff argues that the plain text of the statute provides for a claim or relief and makes no mention of whether Title VII preempts such a claim.

■ The Court acknowledges that the RFRA makes no mention of whether Title VII should preempt that statute, however, a court is allowed to look at legislative history even if the plain meaning of a statute is clear, when "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982). "In such cases, the intention of the drafters, rather than the strict language, controls." *Id.* The legislative history of the RFRA

leaves little doubt that the passing of this act was not to disturb Title VII's remedial administrative scheme. The Senate Report on the RFRA makes it apparently clear that it was Congress' intent that the exhaustion requirement in Title VII's administrative remedies was not to be affected. *See* S. REP. NO. 103-111. Therefore, this Court holds that Title VII preempts Plaintiffs RFRA claim.

## B. Failure To Exhaust Administrative Remedies

Due to this Court's ruling that Title VII preempts the RFRA for an employment discrimination claim, Plaintiff was required to follow the exhaustion requirements of Title VII. Title VII requires an individual to follow certain procedures before filing a complaint for employment discrimination. *See* 42 U.S. § 2000e-16(c). Because Plaintiff failed to follow the procedures laid out in Title VII, Plaintiff's claim must be dismissed.

## IV. CONCLUSION

Due to this Court's holding that Title VII preempts Plaintiff's RFRA claim and Plaintiff failure to exhaust Title VII's administrative remedies, Defendants motion to dismiss for lack of subject matter jurisdiction is hereby, GRANTED.